# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BRETT D. KELLY,<br><br>　Plaintiff,<br><br>v.<br><br>CONMED HEALTHCARE SERVICES,<br>NURSE FELICIA SHONEKAN,<br>HOWARD COUNTY DEPARTMENT OF<br>CORRECTIONS,<br><br>　Defendants. | Civil Action No.: PWG-18-1441 |

## MEMORANDUM OPINION

In this civil rights suit, Brett Kelly, who is proceeding without counsel, alleges that, while he was incarcerated at the Howard County Detention Center ("HCDC"), he did not receive proper medical care for his diabetes, in violation of his Eighth Amendment right to remain free from cruel and unusual punishment. Am. Compl. 4, ECF No. 3. Pending are the motion to dismiss or for summary judgment and memorandum (ECF Nos. 30, 30-1) that Defendants Conmed Healthcare Services and Nurse Felicia Shonekan ("Medical Defendants") filed and the motion to dismiss and memorandum (ECF Nos. 32, 32-1) that Defendant Howard County Department of Corrections filed. Although Plaintiff sought and was granted an extension of time in which to file oppositions to the pending motions, he has not filed anything further. *See* Jan. 8, 2019 Order, ECF No. 36; July 11, 2019 Order, ECF No. 38; Docket. A hearing in this matter is unnecessary and the unopposed motions shall be granted for the reasons stated below. *See* Loc. R. 105.6 (D. Md. 2018).

### **Plaintiff's Allegations**

On March 27, 2018, Plaintiff entered a plea of guilty to a charge of identity theft and received a sentence of ten months in the District Court for Howard County, Maryland, which he

has served.  *See State of Maryland v. Kelly*, No. 0T00099883 (Howard Co. Dist. Ct.), http://casesearch.courts.state.md.us/casesearch (last visited July 10, 2019). Plaintiff asserts that he arrived at HCDC in March of 2018, and shortly thereafter was identified as a chronic care patient because of his diabetes.  Am. Compl. ¶¶ 2, 6.  On or about April 8, 2018, Plaintiff became light-headed and dizzy and sought medical attention.  *Id.* ¶ 7.  Plaintiff claims that a doctor at HCDC, whom he does not name, told him that the medication he was receiving was ineffective because he was not taking it in tandem with another medication.  *Id.*  Plaintiff was promised that the second medication, Januvia, would be delivered to him "as soon as possible."  *Id.*  Plaintiff claims that, despite that promise, he "went several days without medication."  *Id.* ¶ 8.

According to Plaintiff, between April 13 and 29, 2018, he "had several interactions with Nurse Felicia" regarding his medication.  *Id.* ¶ 9.  He claims that she told him that she "didn't care if he received his medication and she wasn't giving him anything."  *Id.*  On April 24 and 25, 2018, Plaintiff filed formal grievances, claiming that he had spoken with Lieutenant Hayhurst about both the failure to provide him the medication he needed and the manner in which Nurse Shonekan treated him.  *Id.* ¶ 10; Apr. 24, 2018 Grievance, ECF No. 3-1, at 3; Apr. 25, 2018 Grievance, ECF No. 3-3. Lieutenant Hayhurst escorted Plaintiff to the medical unit so that the matter could be resolved, and again he was told that he would receive his medication, but by the end of the day he had not received it.  Am. Compl. ¶ 10.

Plaintiff's outside primary care physician, Dr. Richard Lilly, was notified in early May 2018 that Plaintiff still had not received Januvia.  *Id.* ¶ 11.  According to Plaintiff, he was provided Januvia the following day "only because [Dr. Lilly] spoke with medical staff and the Plaintiff paid for the medication out-of-pocket."  *Id.* ¶ 12.  The "Action" section of his Grievance states that

Plaintiff's "medication from home was allowed and accepted by Medical Department on May 2 [2018]." Apr. 25, 2018 Grievance, ECF No. 3-3.

Plaintiff alleges that on May 5, 2018, when Nurse Shonekan was on duty to hand out medications to inmates, she refused to give him both of his medications. Am. Compl. ¶ 13. Plaintiff claims that he saw both medications on the cart, labeled with his name. *Id.* Plaintiff informed Correctional Officer Bolden that Nurse Shonekan refused to dispense both medications to him. *Id.*

On May 10, 2018, Plaintiff signed the Action section of the Grievance, acknowledging that it had been resolved. Apr. 25, 2018 Grievance, ECF No. 3-3; *see also* Am. Compl. 2 ("Matter was closed because I provided my own medication.").

As a result of Plaintiff not receiving both medications, he suffered elevated blood sugar levels, nausea, and severe foot pain. Am. Compl. ¶ 15. Plaintiff also alleges that the interruption in his medication regimen "could cause sever[e] long lasting damages to plaintiff's health." *Id.* ¶ 16. He asserts that other inmates at HCDC have had problems receiving appropriate health care from Conmed. *Id.* ¶ 17. As relief, Plaintiff seeks "immediate oversight" of the health care provided by Conmed Healthcare Services, compensatory and punitive damages, and other unspecified injunctive[1] relief. *Id.* at 6.

## Standards of Review

### Motion to Dismiss

Pursuant to Rule 12(b)(6), Kelly's claims are subject to dismissal if they "fail[ ] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading must contain "a short

---

[1] Plaintiff's release from the Howard County Detention Center makes any request for injunctive relief concerning his medical care moot. *See Slade v. Hampton Rd's Reg'l Jail*, 407 F.3d 243, 248–49 (4th Cir. 2005) (pre-trial detainee's release moots his claim for injunctive relief).

and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).

For purposes of resolving a motion to dismiss, the Court accepts the plaintiff's well-pleaded allegations as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011). While this Court is required to liberally construe documents that self-represented litigants file and hold them to a less stringent standard than those that attorneys draft, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Estelle v. Gamble*, 429 US. 97, 106 (1976), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts that set forth a claim currently cognizable in a federal district court, *see Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Rather, the Court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted).

**Motion for Summary Judgment**

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other

materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). "A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Cole v. Prince George's Cty.*, 798 F. Supp. 2d 739, 742 (D. Md. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

If this initial burden is met, the opposing party may not rest on the mere allegations in the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 251-52. Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment is appropriate. *Anderson,* 477 U.S. at 248–49. For example, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris,* 550 U.S. 372, 380 (2007).

## Analysis

### Howard County Department of Corrections

Title 42 U.S.C. § 1983 authorizes a plaintiff to bring a suit for damages against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects,

5

or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution." Yet, Howard County Department of Corrections is not a "person" and therefore is "not a proper defendant in a 42 U.S.C. § 1983 action, for which a plaintiff must allege injury by a 'person' acting under color of state law." *See Seltzer v. Howard Cty. Det. Ctr.*, No. GLR-16-1225, 2017 WL 772284, at *1 (D. Md. Feb. 28, 2017) (citing 42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 & n.55 (1978)). Thus, Howard County Department of Corrections is entitled to have any claims against it dismissed under Rule 12(b)(6) for failure to state a claim. *See* 42 U.S.C. § 1983; *Monell*, 436 U.S. at 690 & n.55; *Seltzer*, 2017 WL 772284, at *1.

Certainly, insofar as Kelly may have intended to sue Howard County, a county "is amenable to suit and qualifies as a 'person' for purposes of § 1983." *Horn v. Maryland*, No. PWG-17-3633, 2018 WL 704851, at *2 (D. Md. Feb. 2, 2018). But, to bring a § 1983 claim against the County, he would need to bring it as a *Monell* claim, which is a form of § 1983 action under which a municipality, such as the County, is liable "where a policymaker officially promulgates or sanctions an unconstitutional law, or where the municipality is deliberately indifferent to the development of an unconstitutional custom." *Smith v. Ray*, 409 F. App'x 641, 651 (4th Cir. 2011); *see Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978). A municipality is only liable under *Monell* if, pursuant to a municipal policy or custom, a municipal employee took unconstitutional action. *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984); *Walker v. Prince George's Cty., Md.*, 575 F.3d 426, 431 (4th Cir. 2009); *Peterson v. Prince George's Cty.*, No. PWG-16-1947, 2018 WL 488827, at *6 (D. Md. Jan. 19, 2018). Kelly has not stated a *Monell* claim because he fails to allege a County policy or custom that caused the alleged

violation. *See Milligan*, 743 F.2d at 229; *Walker*, 575 F.3d at 431; *Peterson*, 2018 WL 488827, at *6.

## Conmed Healthcare Services

Conmed Healthcare Services is named as a Defendant, but no direct wrong-doing is attributed to it and it appears it is named solely because it is the contractor providing medical care to inmates at the detention center. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Thus, a private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat superior. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Clark v. Md. Dep't of Pub. Safety & Corr. Servs,* 316 Fed. App'x 279, 282 (4th Cir. 2009). The claims against Conmed therefore shall be dismissed.

## Nurse Felicia Shonekan

The Eighth Amendment[2] prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501

---

[2] Plaintiff was serving a sentence for identity theft while incarcerated at HCDC. DOC Mem. 1, ECF No. 32-1; *State of Maryland v. Kelly*, No. 0T00099883 (Howard Co. Dist. Ct.), http://casesearch.courts.state.md.us/inquiry (last visited July 10, 2019). Thus, he was a prisoner and the Eighth Amendment is the applicable standard for his claims regarding medical care.

7

U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543. Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King*, 825 F.3d at 218; *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839–40; *see also Anderson*, 877 F.3d at 544. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference because 'prison officials who lacked knowledge of a

8

risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844).

Plaintiff claims that Nurse Shonekan failed to deliver his medications to him, resulting in an increase in diabetes-related symptoms. Am. Compl. Medical Defendants have described the course of Plaintiff's medical care during his incarceration, Med. Defs.' Mem. 2–3, ECF No. 30-1, and attached his medical records, ECF No. 30-2. Plaintiff has not disputed Medical Defendants' presentation of the facts or offered any other evidence. Thus, the following facts are undisputed:

> Plaintiff entered the Howard County Department of Corrections on or about March 27, 2018. Am. Compl. (CM/ECF 3, P.2). Licensed Practical Nurse Irene Eyamba conducted a medical intake for the Plaintiff that same day, during which Plaintiff stated that he suffered from diabetes. Ex.1: Medical Records, P.1. When asked about his current medications, Plaintiff advised he was currently only taking Metformin. Ex.1: P. 1. On April 4, 2018, during an exam by Physician Assistant Jim Piazza, Plaintiff again advised he was only taking Metformin.
>
> On April 20, 2018, Dr. Robert Younes met with Plaintiff to discuss his medical information, and Plaintiff again stated he has diabetes and is prescribed Metformin for the treatment of his diabetes. On April 20, 2018, Dr. Robert Younes first ordered Januvia, however that order was later canceled by Dr. Keena Dillard on April 26, 2018 and an "alternative medication was ordered." Ex.1: P. 30. On May 5, 2018, Tradjenta was ordered. For the treatment of his diabetes, Plaintiff was prescribed three medications over the course of his time at HCDC, Metformin, Januvia, and Tradjenta. Ex.1: PP. 29-34. On at least 10 documented occasions Plaintiff refused medical treatment. Ex.1: P. 8-12. For example, on May 12 and 15, 2018. Ex. 2: Refusal of Treatment: PP. 6-7. Plaintiff also refused blood pressure and blood sugar checks, and on May 16, 2018 he refused blood sugar check through finger stick and insulin. Ex.1: PP. 10-11.
>
> On April 25, 2018, Plaintiff submitted an Inmate Grievance to HCDC, complaining that he did not receive his medication. (CM/ECF 3, PP. 2-4). On May 5, 2018, Plaintiff filed a written complaint alleging that Nurse Felicia refused to provide his medication, though he does not specify which medication. Section E of the grievance identifies "grievance resolved by Medical Staff. Your medication from home was allowed and accepted by Medical Department on May 2nd." (CM/ECF 3-3, P. 2). Plaintiff signed off on this grievance as resolved on May 10, 2018. Thereafter Plaintiff did not file any other grievances. (CM/ECF 3-3, P. 2).

Med. Defs.' Mem. 2–3.

Dr. Dillard noted on April 26, 2018:

> Patient seen in medical with multiple concerns. He is [complaining of] nausea and vomiting and frequent urination for 2-3 days. He has a history of DM [diabetes], type II in which he takes Metformin and Januvia. He was seen by the Provider on 4/20/18 and medications were ordered. He is concerned because he has not received his Januvia. . . . He states when he takes his Januvia, it controls his blood sugars better and he no longer has the vomiting, or the frequent urination.
> . . .
> . . . Discussion with inmate regarding medication. It appears pharmacy wants medical to order an alternative medication. Inmate has been on this medication for many years. He will be allowed to have family bring in his medication for use.

Med. Recs. 136. In the light most favorable to Plaintiff, I can infer that, after Plaintiff met with a provider on April 20, 2018, he expected to receive Januvia. *See id.* And, the medical records include a note by Ron Grubman of the medical staff on April 24, 2018: "Asked to order alternative medication to Januvia. Since this was ordered by Dr. Eunice, he will have to alter it." *Id.* at 126. This establishes that Januvia was ordered prior to April 24, 2018. *See id.* Indeed, the medical records show that Januvia was provided for Plaintiff, but he was not present to receive it, on April 21, 23, 24, 25, 26, 27, 28, or 29, 2018 or May 1 or 2, 2018, receiving it only on April 22 and 30, 2018. *Id.* at 39–41. He also was not present to receive Metformin (which was offered twice per day) at least once each day from March 29 to April 29, 2018, often missing both of his doses. *Id.* at 38–41. Additionally, Plaintiff refused diabetes medication (insulin) on April 3 and 19, 2018 and May 3 and 16, 2018. *Id.* at 8–10.

The only evidence that Nurse Shonekan ever refused to provide medication to him is a handwritten note dated May 5, 2018 that states: "Today Felicia medical assist. refuse [sic] medication again for no reason." ECF No. 3-2, at 2. The note is signed by witnesses but not by Kelly. *Id.* Defendants acknowledge that it is a "written complaint alleging that Nurse Felicia refused to provide his medication," while also noting that Plaintiff "does not specify which medication." Defs.' Mem. 2–3.

The medical records show, however, that Linda Brown, LPN provided Plaintiff with Metformin and Tradjenta (which only was provided in the mornings) on the morning of May 5, 2018, and Nurse Shonekan provided him with Metformin on the night of May 5, 2018. Med. Rec. 42.

Thus, all that Plaintiff has presented in support of his position that Nurse Shonekan refused to provide him with the medication he requested is an unsigned complaint concerning May 5, 2018, and the medical records establish that he did receive his medications on that date. Certainly, he received Tradjenta instead of Juniva on that date, but inmates are not entitled to a particular course of treatment or medication of their choosing. *Jackson v. Lighsey*, 775 F.3d 170, 178 (4th Cir. 2014). Further, the undisputed facts demonstrate that Plaintiff repeatedly refused insulin and was not present to receive Metformin or Januvia on multiple occasions, such that any failure to receive medications prescribed to him or effects from his failure to take the medication regularly was due to his own conduct. Additionally, there is no evidence that Nurse Shonekan or any other medical provider at HCDC knew before April 20, 2018 that Plaintiff had been taking both Metformin and Januvia for his diabetes prior to his incarceration, as they were not informed about Plaintiff's second medication upon his arrival.

According to Plaintiff, between April 13 and 29, 2018, he "had several interactions with Nurse Felicia" regarding his medication, and she told him that she "didn't care if he received his medication and she wasn't giving him anything." *Id.* ¶ 9. Nurse Shonekan's alleged expression of apathy regarding whether Plaintiff received his medication, if accepted as true, is not enough alone to support an Eighth Amendment claim. In any event, there is no evidence that Nurse Shonekan made this statement, only Plaintiff's unverified allegation. Likewise, Plaintiff's claim that Nurse Shonekan refused to give him medication that was on the cart and marked for his use

is an assertion made in his unverified complaint that remains unsupported by any objective evidence other than a previous, unsigned administrative complaint. Moreover, the medical records do not have any record of these interactions between the parties, other than notes of medications given or times when Plaintiff was not present to receive medication. The absence of a factual statement in a business record under circumstances where it would be reasonable to expect it to be included is itself proof that the statement was not made. *See* Fed. R. Evid. 803(7). Thus, Plaintiff has not shown that there is a genuine dispute of material facts regarding his claims against Nurse Shonekan. *See Scott*, 550 U.S. at 380; *Matsushita Elec. Indus. Co.*, 475 U.S. at 585–87 & n.10; *Anderson*, 477 U.S. at 251-52. A reasonable factfinder could not find for Plaintiff, and therefore summary judgment shall be granted in Nurse Shonekan's favor. *See Anderson*, 477 U.S. at 248–49.

## CONCLUSION

By separate Order which follows, Defendant Howard County Department of Corrections' Motion to Dismiss is granted; the complaint against Conmed Healthcare Services is dismissed; and summary judgment is granted in favor of Defendant Felicia Shonekan.

August 13, 2019                 _____/S/_____
Date                                           Paul W. Grimm
                                                         United States District Judge